UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN R. RAMSEY, JR.,

                Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

CASE NO.    C07-5481KLS

ORDER REVERSING THE
COMMISSIONER'S DECISION
TO DENY BENEFITS AND
REMANDING FOR FURTHER
ADMINISTRATIVE
PROCEEDINGS

Plaintiff, John R. Ramsey, Jr., has brought this matter for judicial review of the denial of his application for disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 58 years old.[1] Tr. 40. He has a high school education and past work experience as a video store sales clerk. Tr. 22, 58, 63.

On October 30, 2003, plaintiff filed an application for disability insurance benefits, alleging

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

disability as of November 15, 2002, due to post traumatic stress disorder ("PTSD"), cervical damage and depression. Tr. 53-55, 57.  His application was denied initially and on reconsideration. Tr. 40-41, 43, 46. A hearing was held before an administrative law judge ("ALJ") on October 25, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 283-334.

On November 17, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)     at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2)     at step two, plaintiff had "severe" impairments consisting of PTSD and a history of cervical spine fusion;

(3)     at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     at step four, plaintiff had the residual functional capacity to perform light work, with certain non-exertional limitations, which precluded him from performing his past relevant work; and

(5)     at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 17-24.  Plaintiff's request for review was denied by the Appeals Council on August 3, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On September 12, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  The administrative record was filed with the Court on November 27, 2007. (Dkt. #10). Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a)     the ALJ erred in failing to provide the weight required by law to a determination of the United States Department of Veterans Affairs' ("VA") that plaintiff was disabled;

(b)     the ALJ erred in finding that plaintiff's PTSD did not equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06;

(c)     the ALJ erred in assessing plaintiff's credibility;

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

1
      (d)     the ALJ erred in evaluating the lay witness evidence in the record; and

2
      (e)     the ALJ erred in finding plaintiff capable of performing other work existing in
            significant numbers in the national economy.

3

Defendant agrees the ALJ erred in evaluating VA's disability determination and in finding plaintiff to be

4
not disabled at step five of the sequential disability evaluation process, but argues that remand for further

5
administrative proceedings is required. For the reasons set forth below, the undersigned agrees with

6
defendant, and hereby finds and orders that while the ALJ's decision should be reversed, this matter

7
should be remanded to the Commissioner for further administrative proceedings.

8
DISCUSSION

9
       This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

10
Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole

11
to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

12
such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

13
v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

14
a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

15
1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

16
one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749

17
F.2d 577, 579 (9th Cir. 1984).

18
I.     Plaintiff's Date Last Insured

19
       To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed

20
on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see

21
also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security

22
statutory scheme requires disability to be continuously disabling from time of onset during insured status

23
to time of application for benefits, if individual applies for benefits for current disability after expiration of

24
insured status). Plaintiff's date last insured was December 31, 2002. Tr. 19. Therefore, to be entitled to

25
disability insurance benefits, plaintiff must establish he was disabled prior to or as of that date. Tidwell,

26
161 F.3d at 601.

27
II.    The ALJ Erred in Evaluating the VA's Determination of Disability

28
       Although a determination by the VA about whether a claimant is disabled is not binding on the

Social Security Administration, an ALJ must consider that determination in reaching his or her decision. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504. Further, the ALJ "must ordinarily give great weight to a VA determination of disability." McCartey, 298 F.3d at 1076. This is because of "the marked similarity" between the two federal disability programs:

> Both programs serve the same governmental purpose--providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

Id. However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id. (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). Both parties agree, and the undersigned finds, that the ALJ did not do so here.

At the hearing, the ALJ asked plaintiff directly whether he was under a disability from his military service. Tr. 291. In response, plaintiff stated that he was, and that his disability rating was 100%. Id. The record also contains a "Decision Review Officer Decision" from the VA, in which plaintiff was found to have a combination of service-connected mental and physical impairments, and with respect to which he was rated as being 60% disabled as of February 23, 1999, 70% disabled as of September 23, 2002, and 80% disabled as of May 22, 2003. Tr. 281. Plaintiff argues that while the ALJ was aware that he had been determined to be disabled by the VA at the hearing, he erred in failing to discuss this fact in his decision. The undersigned agrees.

While the actual written VA decision noted above was submitted for the first time to the Appeals Council – and, thus, the ALJ cannot be faulted for not being aware of its actual contents – as pointed out by plaintiff, he was well aware that a service-connected disability determination existed based on the hearing testimony. Given the requirement that disability determinations from the VA must be considered by an ALJ in reaching his or her disability determination, failure to do so is error. That being said, it is not at all clear, as plaintiff implies, that the ALJ would have been required to give the VA disability determination in this case great weight. As noted above, such weight need not be accorded if the ALJ can

1   give persuasive, specific and valid reasons for doing so.  That remains to be seen.

2   III.     The ALJ's Step Three Analysis Was Proper

3           At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's

4   impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P,

5   Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

6   1999).  If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed

7   disabled. Id.  The burden of proof is on the claimant to establish he or she meets or equals any of the

8   impairments in the Listings. Tacket, 180 F.3d at 1098.

9           A mental or physical impairment "must result from anatomical, physiological, or psychological

10  abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."

11  20 C.F.R. § 404.1508.  It must be established by medical evidence "consisting of signs, symptoms, and

12  laboratory findings." Id.  An impairment meets a listed impairment "only when it manifests the specific

13  findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248

14  *2.  An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms,

15  signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed

16  impairment." Id. at *2.  However, "symptoms alone" will not justify a finding of equivalence. Id.

17          As noted above, the ALJ found none of plaintiff's impairments met or equaled any of the criteria of

18  those in the Listings.  The ALJ further specifically found in relevant part as follows:

19          The claimant's cervical spine impairment did not meet the criteria of any listed
            impairment. [Medical expert] Dr. [Robert] McDevitt testified [at the hearing that]
20          claimant's posttraumatic stress disorder resulted in moderate restriction of activities of
            daily living, moderate difficulties in maintaining social functioning, moderate
21          difficulties in maintaining concentration, persistence or pace and no episodes of
            decompensation of extended duration.  The testimony of Dr. McDevitt is consistent
22          with the treatment record and is accepted as credible.  The claimant functioned
            independently and visited friends daily.  He reported he was able to shop but avoided
23          crowds and long lines.  He spent his time clam digging, walking on the beach, looking
            for golf balls on a golf course, surfing the Internet and keeping appointments.  He
24          attended church on Sundays and frequented a local coffee shop . . . Testing revealed
            mildly to moderately impaired attention and concentration . . . The claimant's
25          symptoms have been chronic and there is no evidence of episodes of decompensation.
            There is no evidence claimant's impairments medically equaled a listed impairment.

26  Tr. 20.

27          Plaintiff argues that to the extent the ALJ relied on the testimony of Dr. McDevitt, he should have

28  found his impairments in combination equaled the severity of the criteria for Listing 12. 06.  Specifically,

plaintiff points to Dr. McDevitt's testimony in response to the question of whether his PTSD, chronic

spine problems and obesity equaled any Listings. Tr. 321.  Plaintiff states that Dr. McDevitt then testified

that "[p]utting all those things together I think one could make a case for meeting, at least equaling maybe

the criteria" for "anxiety-related disorders [under Listing] 12.06." Id.  Plaintiff's counsel then attempted to

clarify Dr. McDevitt's testimony, however, noting that while he felt one could "make a case for it," did he

actually think that the combination of impairments here did equal Listing 12.06. Id.  In response thereto,

Dr. McDevitt then went on to further testify that:

> I don't, I don't, I think it falls down with the issue of how much residual functioning he
> has and he certainly has some residual functioning evident in that, in the exams that
> they did in 2003, 2004.

Id.  Given this testimony, plaintiff's argument has no merit.

IV.     The ALJ Properly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749

F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as

long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148

(9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for

the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must

identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.;

Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is

malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. O'Donnell v.

Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

1  also may consider a claimant's work record and observations of physicians and other third parties

2  regarding the nature, onset, duration, and frequency of symptoms. Id.

3       The ALJ discounted plaintiff's credibility in part because prior to his date last insured, there was

4  "little evidence" to support his allegations of pain and mental symptoms. Tr. 21.  A determination that a

5  claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing

6  requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues

7  though that in so discounting his credibility for this reason, the ALJ both used circular logic and applied

8  the incorrect legal standard.  Specifically, he asserts that in assessing his credibility, the ALJ first must

9  determine whether there is objective medical evidence of an impairment that reasonably could be expected

10 to produced some degree of the symptoms alleged.  This is correct. See Cotton v. Bowen, 799 F.2d 1403

11 (9th Cir. 1986); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991) (en banc)) (claimant must produce

12 medical evidence of underlying impairment which is reasonably likely to be cause of alleged pain).  Next,

13 plaintiff asserts the ALJ then must assess his credibility concerning the severity of his symptoms separate

14 from the extent of support therefor contained in the medical evidence.  To allow otherwise, plaintiff

15 argues, is improper.  This is an incorrect reading of the law.

16      Determining whether there is a sufficient medical basis for the existence of an impairment which

17 could be expected to cause the degree of symptoms alleged is distinctly different from a determination as

18 to whether the medical evidence in the record overall supports that degree.  That is, the first step in

19 assessing a claimant's credibility is concerned with the question of whether there is an actual medically

20 determinable impairment that could cause the alleged symptoms.  It is not a finding that those symptoms

21 are caused or consistent with evidence of the underlying impairment.  This is because a claimant must have

22 a medically determinable impairment in order to be entitled to disability benefits. See Tackett v. Apfel,

23 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable

24 impairment that can be expected to result in death or that has lasted or can be expected to last for

25 continuous period of not less than twelve months).

26      It is only after the presence of such an impairment has been determined that the ALJ then goes on

27 to determine whether the evidence in the record, medical or otherwise, actually supports the alleged degree

28 of disability or limitation.  This is why, as noted above, the Ninth Circuit expressly has held that

determining that a claimant's complaints are inconsistent with the objective medical evidence in the record

ORDER
Page - 7

1   can satisfy the clear and convincing requirement. See Regennitter, 166 F.3d at 1297. The only limitation

2   on the ALJ's use of this as a reason for discounting a claimant's credibility is that the claimant's testimony

3   may not be rejected solely because the degree of symptoms alleged is not supported by objective medical

4   evidence. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Byrnes v. Shalala, 60 F.3d 639,

5   641-42 (9th Cir. 1995); Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995); Bunnell v. Sullivan, 947

6   F.2d 341, 346-47 (9th Cir.1991) (en banc)). This is because to allow otherwise "'would render

7   meaningless' the requirement that" the ALJ "consider all relevant evidence," not just that which is

8   medical. Bunnell, 947 at 347 (citation omitted). Plaintiff's analysis would overturn longstanding Ninth

9   Circuit precedent on this issue.

10      Plaintiff takes issue with the ALJ's statement that there was little evidence of mental symptoms for

11   the period prior to his date last insured, pointing to an August 22, 2002 progress note from Geraldine M.

12   Spillers, a registered nurse (Tr. 212), and one from Sonia Lim, M.D., dated September 27, 2002 (Tr. 210-

13   11). It is true that Ms. Spillers did observe at the time that plaintiff's affect was anxious and worried and

14   that his mood was dysthymic and irritable. Tr. 212. However, plaintiff denied any other mental symptoms,

15   including suicidal ideation. Id. This hardly indicates a disabling level of severity. Similarly, Dr. Lim

16   found his mental symptoms to be fairly mild, with only some slowed thinking and speech and dysphoria,

17   though in regard to the latter plaintiff stated he was "not feeling so depressed." Tr. 210.

18      Plaintiff points to the following statement made by Dr. Lim:

19      [H]is presentation of slowed thinking and speech seems to be inconsistent with hx
        [history] of a businessman and who owns and runs a video store and manages on site
20      problems in the store.

21   Tr. 210. Plaintiff implies that Dr. Lim really was saying here that someone with such symptoms was not

22   capable of running and managing a video store. A more reasonable reading of this statement, however, is

23   that given plaintiff's history of having been able to do so, it is the presentation of the symptoms that he

24   demonstrated that are out of place. That is, Dr. Lim appears to be calling into question the validity of the

25   presentation of those symptoms. This would seem to be the case, given the context of the examination as a

26   whole and, as noted above, the fairly unremarkable objective findings made by Dr. Lim.

27      In addition, plaintiff asserts that during the relevant period prior to his date last insured, the VA had

28   rated him as being 70% disabled due to his mental impairments. The only mental impairment upon which

1  the VA based its disability determination, however, was plaintiff's PTSD. Tr. 281.  Further, while the VA

2  did find plaintiff to be 70% disabled as of September 23, 2002, that rating was given for all of plaintiff's

3  impairments, both the PTSD and the physical ones. See id.  Nevertheless, it appears that the VA attributed

4  half of plaintiff's 70% disability rating to his PTSD. See id.  Even so it is not clear what medical evidence

5  the VA actually used to make its determination.

6      Plaintiff asserts that there is no evidence the VA was wrong, but as noted by the ALJ there is little

7  evidence of significant mental symptoms prior to his date last insured.  The undersigned does note, though,

8  that as discussed above, a VA determination of disability must be considered by the ALJ and given great

9  weight, unless persuasive, specific and valid reasons are given for not doing so.  Also as discussed above,

10  the ALJ did not have the actual written VA determination when he issued his decision, although he did err

11  in failing to consider the issue of the existence of plaintiff's VA disability rating given plaintiff's

12  testimony at the hearing.  It is the existence of that determination and rating which calls into question

13  somewhat the ALJ's reason here for discounting plaintiff's credibility.  As can be seen herein, however,

14  the ALJ gave a number of other valid reasons for discounting plaintiff's credibility.

15      The ALJ also discounted plaintiff's credibility because the record contains little or no evidence that

16  he sought or received treatment for his alleged disabling pain and mental symptoms prior to his date last

17  insured. Tr. 21.  Failure to assert a good reason for not seeking, or following a prescribed course of,

18  treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the

19  claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel,

20  172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and

21  claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v.

22  Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative

23  treatment only to be suggestive of lower level of pain and functional limitation).

24      Plaintiff does not challenge the ALJ's finding that plaintiff was not prescribed pain medication

25  prior to his date last insured.  He argues, however, that despite this lack of prescribed medication, at least

26  someone believed him to have a serious pain problem, because he was sent to have an MRI of his spine

27  performed in mid-November 2002. See Tr. 121.  Plaintiff asserts that it is unlikely such an expensive test

28  would have been ordered if he was not having neck pain.  It does appear that the MRI was ordered due to

plaintiff's complaints of pain with numbness and tingling down his arms. Id.  Yet, this is entirely different from an objective finding by a medical opinion source confirming the presence of those symptoms or their existence to the same extent as reported by plaintiff.  In any event, merely having pain and suffering from disabling pain are two entirely different things.  An MRI alone does not establish the latter.

Plaintiff next argues that medical evidence which was generated after a claimant's date last insured consistently related his neck pain symptoms back to a slip and fall accident he experienced prior to the date his insured status expired.  See Tr. 178.  Medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability" during that period.  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).   Plaintiff, however, cites to only one treatment record here.  Second, and more importantly, again having pain is not at all the same thing as demonstrating that pain is at a disabling level, and with respect to which appropriate treatment has been sought and prescribed.  The one treatment record plaintiff cited to, furthermore, resulted in fairly unremarkable objective findings on examination. Tr. 178.  While plaintiff was noted to have some tenderness in his cervical spine and was diagnosed with neck pain, he merely  was "advised to use anti-inflammatories and a muscle relaxant and to avoid painkillers." Id. (emphasis added).

In regard to his failure to seek treatment for his mental symptoms, plaintiff asserts that there was a five-month gap in treatment – specifically, missed appointments – because, as he told Ms. Spillers in late February 2003, he was overwhelmed by his symptoms and trying to deal with his business.  See Tr. 207-08.  However, while plaintiff did report that he had missed appointments because he was overwhelmed with his video business, he did not state that this was due to his symptoms.  See Tr. 207.  Thus, plaintiff has failed to establish that it was his mental impairments and symptoms, and not the usual demands inherent in running one's own business, that caused him to miss them.  As such, the ALJ did not err here.

Lastly, discounted plaintiff credibility in part for the following reason:

> . . . Despite his symptoms, the claimant reported an active lifestyle.  He indicated he spent his days keeping appointments, watching DVD movies, clam digging, looking for a golf course, surfing the Internet, walking on the beach, exercising on his treadmill and collecting baseball cards.  He reported visiting friends or his parents daily, going to a local coffee shop and attending church.  He reported doing some cooking and cleaning.  He reported shopping but avoiding crowds and long lines . . .

Tr. 21-22.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities.  Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to

spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues that this was not a valid reason for discounting her credibility, asserting that the ALJ failed to address the level at which these activities were performed and his testimony regarding the variability of his ability to function on good days versus bad days.  The undersigned agrees the activities the ALJ listed alone do not necessarily show plaintiff spends a substantial part of his day performing them, or that they are all transferrable to a work setting.  Nevertheless, the fact that one or more of the reasons for discounting plaintiff's credibility were improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case overall for the reasons discussed above. Tonapetyan, 242 F.3d at 1148.

V.      The ALJ Did Not Err in Evaluating the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains statements from plaintiff's spouse. Tr. 79-87.  The ALJ evaluated that evidence as follows:

> The claimant's spouse reported in December 2003 that he could no longer hold a job, follow directions, fix the car or remember things.  He could walk a mile and then would need to rest for 15 minutes.  He could not pay attention for very long.  They had to sell their business in March because of his increased cervical pain and PTSD symptoms. . . .  The allegations of the claimant's spouse are not entirely consistent with the evidence of record prior to the claimant's date last insured.  He sought minimal treatment for pain complaints or PTSD symptoms prior to December 31, 2002.

Tr. 22.  Plaintiff argues that rejecting lay evidence because it is not supported by medical evidence is not consistent with Ninth Circuit case law, nor is it germane to the lay witness herself.  Plaintiff is wrong on both counts.  First, as noted above, the Ninth Circuit expressly has held that an ALJ indeed may discount lay testimony if it conflicts with the medical evidence in the record. Lewis, 236 F.3d at 511; Vincent, 739 F.2d at 1395.

While it may have been suspect to discount the credibility of plaintiff's spouse here with respect to the mental symptoms she reported observing given the VA disability determination, that still leaves the fact that, as discussed above, there is very little medical evidence in the record supporting the disabling physical symptoms plaintiff has asserted prior to his date last insured.  Second, conflict with the medical evidence in the record certainly is a reason germane to the credibility of plaintiff's spouse, as she has reported observing symptoms that the ALJ properly found contrary to that evidence.  The undersigned thus finds no error here.

VI.      The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ posed the following hypothetical to the vocational expert at the hearing:

1

2

. . . [L]et's assume an individual age 52 at onset with a 12th grade education and the experience indicated by you. . . . Mental limitations, cognitive impairments would limit to simple work.  Could persist at detailed, repetitive, routine work when instructions were given verbally [INAUDIBLE] at a slow pace for brief and simple tasks.  Able to focus and attend regularly on a regular workday.  May require additional supervision.  Limit public contact to only occasional as far as the public is concerned.  Okay with regard to co-workers.  With regard to physical limitations, basically at the light residual functional capacity occasionally lifting 20 pounds, frequently 10; sitting, standing, and walking each approximately six hours in an eight-hour day; pushing and pulling unlimited commensurate therewith.  Postural limitations to include never use of ladder, rope, or scaffolding, occasional climbing of ramps and stairs.  Otherwise frequent balance, stoop, kneel, crouch, and crawl.  Manipulative limitations limited as far as his upper extremities are concerned to only limited reaching in all directions with both arms.  Environmental limitations, none listed but I think we should consider avoided [sic] concentrated exposure to hazards due to the reference to avoidance of hazards in the mental limitations.

3

4

5

6

7

8

9

Tr. 324-25.  In response to that hypothetical, the vocational expert testified that there were other jobs in the

10

economy plaintiff could do. Tr. 325-27.  Based on this testimony, the ALJ found plaintiff to be capable of

11

performing other jobs existing in significant numbers in the national economy. Tr. 23.

12

The vocational expert testified that to be able to perform the jobs he identified that plaintiff could

13

do, it was important to have the ability to maintain pace and fulfill a task in a timely way, and that "if a

14

person got below certain levels on a consistent basis, . . . that would be detrimental to . . . maintaining

15

employment." Tr. 331-32.  Plaintiff argues, however, that because the hypothetical the ALJ posed limited

16

him to performing at a slow pace except for with respect to brief and simple tasks, he is unable to perform

17

any of the jobs identified by the vocational expert.[3]  The undersigned agrees that the slow pace limitation

18

calls into question the ALJ's finding that plaintiff is able to perform those jobs.  Because the vocational

19

expert did not expressly testify that plaintiff could not perform them with that limitation, though, remand

20

for further consideration of this issue is required.

21

Next, plaintiff argues that because the hypothetical included a general limitation to simple work,

22

and because the Dictionary of Occupational Titles ("DOT") defines each job identified by the vocational

23

expert as requiring a reasoning level above that needed for performing simple work, he is precluded from

24

25

26

[3]The ALJ's statement regarding this particular limitation as it appears in the hearing transcript reads a little unclearly, given that, as noted above, one portion thereof was transcribed as being inaudible. See Tr. 324 ("Could persist at detailed, repetitive, routine work when instructions were given slowly [INAUDIBLE] at a slow pace for brief and simple tasks.").  In his assessment of plaintiff's residual functional capacity, however, the ALJ expressly found that "[p]ace would be slow except for brief and simple tasks." Tr. 20.  This immediately follows the ALJ's finding that plaintiff "could persist at detailed, repetitive work when instructions were given verbally." Id. Given this, the undersigned thus assumes the ALJ was stating in the hypothetical that pace would be slow except for brief and simple tasks.

27

28

ORDER
Page - 13

performing those jobs for this reason as well.  First, while the ALJ did state that plaintiff would be limited to performing simple work (Tr. 324), it seems he did not intend to limit plaintiff to the type of "simple" work that is contemplated by the DOT as explained below.  As noted above, the hypothetical also provided that plaintiff would be able to "persist at detailed, repetitive, routine work when instructions were given verbally [INAUDIBLE] at a slow pace for brief and simple tasks." Tr. 324.  Although, as noted above, this language reads a little unclearly, particularly given the inaudible portion thereof, it is likely the ALJ gave a limitation in line with that set forth in his assessment of plaintiff's residual functional capacity:

> He could persist at detailed, repetitive work when instructions were given verbally.
> Pace would be slow for brief and simple tasks.

Tr. 20.  Even assuming that taken together this language indicates the ALJ intended to limit him to no more than simple work, plaintiff's argument still fails here.

All but one of the jobs identified by the vocational expert are defined by the DOT as requiring the individual performing the job to have a general education development ("GED") reasoning development level of 2 (see Tr. 327; Dkt. #12-2 – #12-7), which in turn is defined as follows:

> LEVEL 2
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT, Appendix C.  Plaintiff asserts, however, that the ALJ limitation to simple work equates with a GED reasoning development level of 1, which the DOT defines as:

> Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Id.  In essence, plaintiff has focused on the use of the word "detailed" in the DOT's definition of Level 2 reasoning, and the word "simple" in its definition of Level 1 reasoning.

The undersigned disagrees, however, that a limitation to simple work in this case is commensurate with Level 1 reasoning.  Several courts have found Level 2 reasoning to be consistent with the ability to do simple, routine and/or repetitive work tasks. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (Level 2 reasoning more consistent with limitation to simple, routine work tasks); Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D. Cal. 2005) (limitation to simple and repetitive tasks closer to Level 2 reasoning); Flaherty v. Halter, 182 F.Supp.2d 824, 850-51 (D. Minn. 2001) (Level 2 reasoning did

1   not conflict with limitation to work involving simple, routine, repetitive, concrete, and tangible tasks).

2       It is true that at least one court appears to disagree with the position taken by the above courts. <u>See</u>

3   <u>Lucy v. Chater</u>, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that claimant who is limited to

4   following only simple instructions can engage in full range of sedentary work because many unskilled jobs

5   in that category require reasoning levels of 2 or higher).  The undersigned, however, finds more persuasive

6   the discussion of this issue more recently provided by the United States District Court for the Central

7   District of California:

8       This leaves the question of whether the vocational expert's opinion contradicted the
        DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding
9       limiting Meissl to "simple, repetitive" tasks. The Court finds that it does not.

10      As one goes up the numerical reasoning development scale used by the DOT, the level
        of detail involved in performing the job increases while the job task becomes less
11      routine. For example, a job with a reasoning level of one only requires that the worker
        be able to "[a]pply commonsense understanding to carry out simple one-or two-step
12      instructions" in "standardized situations with occasional or no variables." DOT at 1011.
        In contrast, a job with a reasoning level of three would require that the worker "[a]pply
13      commonsense understanding to carry out instructions furnished in written, oral, or
        diagrammatic form" and deal "with problems involving several concrete variables ...."
14      DOT at 1011. The middle ground between these two points is also where the vocational
        expert identified a job with the lowest reasoning development score that Meissl could
15      perform, namely a stuffer.

16      A job with a reasoning level of two requires that the worker "[a]pply commonsense
        understanding to carry out detailed but uninvolved written or oral instructions" and deal
17      with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job
        would involve more detail, as well as a few more variables, than that with a reasoning
18      level of one. The question becomes whether a person limited to carrying out simple,
        repetitive instructions could still perform a job with such a reasoning score.
19
        Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the
20      word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word
        "detailed" with the Social Security regulations' use of the word "detailed instructions"
21      in formulating a claimant's mental RFC. The Court is not convinced that such a neat,
        one-to-one parallel exists between the two.
22
        The Social Security regulations separate a claimant's ability to understand and
23      remember things and to concentrate into just two categories: "short and simple
        instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii);
24      <u>see also</u> 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be
        able to sustain attention and persist at simple tasks but may still have difficulty with
25      complicated tasks"). The DOT, on the other hand, employs a much more graduated,
        measured and finely tuned scale starting from the most mundane ("simple one- or
26      two-step instructions" at level one), moving up to the most complex ("applying
        principles of logical or scientific thinking ... apprehend the most abstruse classes of
27      concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations
        use of the term "simple" with its use in the DOT would necessarily mean that all jobs
28      with a reasoning level of two or higher are encapsulated within the regulations' use of
        the word "detail." Such a "blunderbuss" approach is not in keeping with the finely

calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir.2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001).

Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D.Cal. 2005).

As noted above, the hypothetical posed by the ALJ expressly provides that in addition to being limited to simple work, plaintiff "[c]ould persist at underlined detailed, repetitive, routine work when instructions were given verbally." Tr. 324 (emphasis added).  Even assuming that plaintiff is correct in arguing that the ALJ then modified this by adding the phrase "at a slow pace for brief and simple tasks" (id.), it still implies an ability to perform work-related tasks at a level that is higher than mere simple work contemplated by Level 1 reasoning.  As the Meissl court noted, furthermore, such reasoning is "the lowest

1  rung on the development scale," involving "fairly limited reasoning required to do the job," and is to be

2  applied to "the most elementary of occupations," with "only the slightest bit of rote reasoning being

3  required." Id. at 984.  Here, especially in light of the above statements concerning detailed work, the ALJ

4  gave no indication that he intended to limit plaintiff to those type of low-level jobs.

5          Lastly, plaintiff argues that the restriction to "only limited reaching in all directions with both

6  arms" contained in the hypothetical (Tr. 324), conflicts with the DOT's requirement that all of the jobs

7  identified by the vocational expert require frequent or constant reaching.  See (Dkt. #12-2 – #12-7).  The

8  undersigned agrees.  It would seem apparent that a limitation on reaching in all directions would

9  negatively impact the ability to reach constantly, and likely on the ability to reach frequently as well.

10 Because this limitation was not further defined by the ALJ, however, it is not clear exactly to what extent it

11 would restrict or preclude plaintiff from being able to perform those jobs.

12         The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts

13 between her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir.

14 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to

15 support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any

16 discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The ALJ also

17 must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL

18 189704 *4.  As discussed above, the limitations on pace and reaching contained in the hypothetical posed

19 by the ALJ indicate that the vocational expert's testimony concerning jobs existing in the economy that

20 plaintiff could do may conflict with the definitions of those jobs contained in the DOT.  The ALJ's failure

21 to address these potential conflicts was error.

22 VII.    Remand for Further Administrative Proceedings

23         The Court may remand this case "either for additional evidence and findings or to award benefits."

24 Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

25 except in rare circumstances, is to remand to the agency for additional investigation or explanation."

26 Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

27 which it is clear from the record that the claimant is unable to perform gainful employment in the national

28 economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain with respect to the VA's determination of disability and plaintiff's ability to perform other jobs existing in significant numbers in the national economy, remand to the Commissioner for further administrative proceedings in this matter is appropriate.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff was not disabled.  Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

DATED this 24th day of June, 2008.

Karen L. Strombom
United States Magistrate Judge